SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**STEVEN S. CHAMBERLIN, TXSB #24095296**
Assistant United States Attorney
steven.chamberlin@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00452-SI** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **RAYMOND LESTER BURNETT,** | |
| **Defendant.** | |

**Introduction**

The government respectfully recommends a sentence of 168 months imprisonment.

## BACKGROUND

On July 18, 2024, law enforcement officers were surveilling Echo Staton (Staton), regarding her involvement in trafficking narcotics. Staton was observed driving a vehicle to a public parking lot, where she met up with a female who was there waiting. Officers witnessed a brief encounter that based on their background, training, and experience, appeared to be a drug transaction. Law enforcement watched Staton drive to a convenient store where there was a

vehicle waiting, and this vehicle followed Staton to the Defendant's residence. Staton and the driver of the other vehicle entered the Defendant's residence. Shortly thereafter, the Defendant arrived home and entered his residence. Law enforcement officers were aware of the Defendant's involvement in trafficking narcotics from previous drug transactions with him and his numerous convictions for distributing controlled substances.

Shortly after the Defendant arrived home, a fourth vehicle arrived. The driver of the fourth vehicle was observed entering the Defendant's residence carrying a backpack that appeared to be heavily laden. The Defendant and the driver of the fourth vehicle were seen walking out of the Defendant's residence together. The Defendant was carrying a large brown grocery bag, which he placed in the back of his car. The driver of the fourth vehicle was carrying the backpack; however, it now appeared to be empty based on the manner it was being carried. The Defendant then drove away from his residence.

Law enforcement activated their emergency lights to stop the Defendant and he continued to drive. Law enforcement then activated their sirens and the Defendant stopped. As Officers approached the Defendant's vehicle, they were able to observe a methamphetamine bong with burnt residue in a cupholder in the center console next to two blow torch lighters and a brown backpack in the front passenger seat.

///

///

///

///

///

///



The Defendant was arrested and provided his *Miranda* warnings, which the Defendant acknowledged. During a search of the Defendant's vehicle, Officers located a bag of methamphetamine in the center console, and multiple bags of methamphetamine in the brown backpack along with multiple packing baggies.







A baggie of methamphetamine was located in the pocket attached to the backside of the front passenger seat.




In the trunk of the Defendant's vehicle, law enforcement found the brown grocery bag the Defendant carried from his house, which contained six one-gallon sized zip lock bags full of methamphetamine.

///

///

///

///

///

///



The Defendant was confronted with the methamphetamine in his vehicle, and he admitted he had just purchased it from the driver of the fourth vehicle who was carrying the backpack. The Defendant consented to a search of his residence, where Officers found a bag of methamphetamine in the Defendant's bedroom. All of the suspected methamphetamine field tested positive for methamphetamine and the contents of the brown grocery bag the Defendant was seen carrying were determined to be 2,798.4 grams of methamphetamine.

The Defendant has numerous convictions related to the trafficking of narcotics including: 1.) in 2003 the Defendant was convicted of two counts of Delivery/Manufacture of a Controlled Substance in Multnomah County, 2.) in 2006 the Defendant was convicted of Manufacture of a Controlled Substance in Multnomah County, 3.) also in 2006, the Defendant was convicted of Unlawful Delivery of Methamphetamine in Multnomah County, 4.) again in 2006 the Defendant

was convicted of Delivery of Methamphetamine in Multnomah County, 5.) in 2007, the Defendant was convicted of Delivery of Methamphetamine in Multnomah County, 6.) in 2013, the Defendant was again convicted of Unlawful Delivery of Methamphetamine in Multnomah County, and 7). in 2015, the Defendant was convicted for Unlawful Delivery of Methamphetamine in Multnomah County. The Defendant also has multiple felony convictions for non-drug related offenses.

On February 3, 2026, the Defendant pleaded guilty to the indictment, admitting on July 18, 2024, he was in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) by knowingly possessing with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine.

## ARGUMENT

### A. The defendant correctly receives the career offender enhancement pursuant to USSG § 4B1.1(b).

The Government's plea agreement allows Defense to argue against the application of career offender enhancement. However, the Defendant bears the burden of proving that he is not a career offender under USSG § 4B1.1(a) by a preponderance of evidence, and he has not done so at this time. *See United States v. Howard*, 894 F.2d 1085, 1089-90 (9th Cir. 1990) (Defendant bears the burden of proof where he seeks to lower an offense level at sentencing, the burden is a preponderance of the evidence.). If he satisfies this burden of proof at the time of sentencing, then the Court can remove the career offender enhancement.

a. The Defendant is a career offender.

USSG § 4B1.1(a) requires the Court to undergo a three-step analysis to determine if the career offender enhancement applies. USSG § 4B1.1(a) states a defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant

offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. USSG § 4B1.1(b) provides the offense level for an offense with a statutory maximum sentence of life at 37 and also places the criminal history category at VI.

i. The Defendant was over 18 years old when he committed the instant offense.

First, the Court must determine whether the Defendant was at least 18 years of age at the time he committed the instant offense. According to the PSR and the Defendant's criminal history, the Defendant was born prior to 1965, placing him over eighteen years of age in 2024 when the instant offense was committed. (PSR Pg. 2 Identifying Data). Additionally, the Defendant's first adult felony conviction occurred in 2003. Therefore, the Defendant was over 18 years old when he committed the instant offense.

ii. The instant offense is a felony-controlled substance offense.

The second step requires the Court to determine whether the instant offense is a felony and either a crime of violence or a controlled substance offense. Title 18 U.S.C. § 3156(a)(3) defines a "felony" as an offense punishable by a maximum term of imprisonment of more than one year. The Defendant was indicted on December 10, 2024, with a single count of Possession with Intent to Distribute 500 grams or more of a mixture of Methamphetamine in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). This charge carries a mandatory minimum sentence of 10 years and a maximum term of imprisonment as life. As the maximum term of imprisonment is more than one year, the instant offense qualifies as a felony.

Part two of the second step requires the Court to resolve whether the instant offense is a crime of violence or a controlled substance offense. USSG § 4B1.2(b) provides the definition of

a controlled substance offense, which states in part a controlled substance offense means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the *possession of a controlled substance* (or a counterfeit substance) *with intent to* manufacture, import, export, *distribute*, or dispense. (emphasis added).

Again, the Defendant is charged with Possession with Intent to Distribute Methamphetamine in violation of Title 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii), which is specifically enumerated within USSG § 4B1.2(b), therefore the instant offense as a felony and a controlled substance offense.

iii. The Defendant has two prior felony convictions for controlled substance offenses.

The third step asks the Court to evaluate whether the Defendant has at least two prior felony convictions for controlled substances offenses. "Two prior felony convictions" is defined by USSG § 4B1.2(c) which states (1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense, and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of §4A1.1(a), (b), or (c).

According to the Defendant's criminal history and the PSR, the Defendant was arrested on October 11, 2007, by the Gresham Police Department. (PSR ¶ 45). On December 19, 2007, the Defendant was convicted of Delivery of Methamphetamine in violation of ORS 475.890(2) in the Multnomah County Circuit Court in case number 071035181 and was sentenced to 20 days in jail and 24 months of probation. *Id*. On August 4, 2009, the Defendant's probation was

revoked and a 21-month sentence in the Oregon Department of Corrections (DOC) was imposed along with two years of post-prison supervision. *Id*. The defendant was released on post-prison supervision on September 24, 2010. *Id*.

While on post-prison supervision, the Defendant was arrested by the Multnomah County Sheriff's Office on October 10, 2012, for delivering methamphetamine. (PSR ¶ 49). The Defendant was later convicted for Delivery of Methamphetamine in violation of ORS 475.890(2) on March 14, 2013, in the Multnomah County Circuit Court with case number 121235351 and sentenced to 25 months in DOC with three years of post-prison supervision. *Id*. The Defendant's post-prison supervision began on July 2, 2014. *Id*.

Again, while on post-prison supervision, the Portland Police Bureau arrested the Defendant on September 15, 2015. (PSR ¶ 50). The Defendant was later convicted of Delivery of Methamphetamine in violation of ORS 475.890(2) on October 12, 2015, for in the Multnomah County Circuit Court with case number 15CR40280 and was sentenced to 48 months in DOC with 36 months of post-prison supervision. *Id*.

In all three of the above convictions occurred prior to 2024, which is the year of our instant offense, and the term of incarceration imposed upon the Defendant at sentencing for each one was more than one year, making each of these prior felony convictions. In each of these prior felony convictions, the defendant was convicted of Delivery of Methamphetamine, which prohibits a person from the actual, constructive or attempted transfer, …, from one person to another of a controlled substance, ... ORS 475.005.

The Ninth Circuit has previously held that Oregon's Delivery statute ORS 475.890 qualifies as a controlled substance offense in *Crum*. The question before us is whether Crum's prior conviction for delivery of methamphetamine in violation of Oregon Revised Statutes §

475.890 qualifies as a "controlled substance offense." *United States v. Crum*, 934 F.3d 963 (9th Cir. 2019). We conclude that it does, and remand to the district court for resentencing. *Id*. This was later overturned by *Castillo*, when the Ninth Circuit held that Application Note 1 to the former version of § 4B1.2 "improperly expands the definition of "controlled substance offense" in USSG § 4B1.2(b)." *United States v. Castillo*, 69 F.4th 648, 651 (9th Cir. 2023). Stating that courts may not defer to Application Note 1 in determining whether a crime fits into § 4B1.2(b)'s definition of "controlled substance offense." Id. at 662-63.

But *Castillo*'s holding is of no consequence here because § 4B1.2 was amended on November 1, 2023. *United States v. Ottinger*, 2023 U.S. Dist. LEXIS 225002 (S.D. Cal. Dec. 18, 2023). The current version of § 4B1.2 deleted Application Note 1 and moved the relevant provision to the text of § 4B1.2(d), meaning that *Castillo*'s holding regarding Application Note 1 is no longer applicable. *Id*. Again, as the Defendant's current offense was committed after November 1, 2023, the prior Oregon convictions for Delivery of Methamphetamine qualify as a controlled substance offense for § 4B1.1 career offender enhancement.

The last step in the analysis is to determine whether the prior convictions are counted separately. Pursuant to USSG § 4A1.1(a-c) states the total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A:

> (a) Add **3** points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in subsection (a).
> (c) Add **1** point for each prior sentence not counted in subsection (a) or (b), up to a total of **4** points for this subsection.

The term "prior sentence" is defined by §4A1.2(a), § 4A1.2(a)(2) states in part if the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. *Prior sentences always are counted separately if the sentences*

*were imposed for offenses that were separated by an intervening arrest* (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). *Id*. (Emphasis added).

Certain prior sentences are not counted or are counted only under certain conditions: A sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period. *Id*.

Again, the Defendant committed the instant offense on July 18, 2024, if the Defendant committed the prior crime or was incarcerated between July 18, 2009, and July 18, 2024, then it would count toward his criminal history points. The Defendant was arrested on the oldest of the three prior convictions in 2007, sent to prison in 2009, released in 2010. The Defendant is then arrested in 2012, sent to prison in 2013, and released in 2014. Lastly, the Defendant was arrested in 2015, sent to prison in 2015, and released in 2018. The Defendant either committed the offense or was incarcerated during the previous 15-year term of the instant offense. As clearly delineated above, each of the Defendant's three prior felony convictions would be counted under USSG § 4A1.1. Moreover, due to an intervening arrest between each conviction, each prior felony conviction listed above was a separate sentence via §4A1.2.

Therefore, the Defendant was over 18 years of age when he committed the instant offense, the instant offense is a controlled substance offense, and each of the Defendant's three prior felony convictions listed above were separate controlled substance offenses that fall within the previous 15 years of the date of our instant offense establishing the Defendant as a career offender pursuant to USSG § 4B1.1.

///

///

**GOVERNMENT'S SENTENCING RECOMMENDATION**

It's the Government's position that the PSR is correctly scored and would ask the court to adopt its findings of fact. The Government would also direct the court to the bottom of page 1 of probations recommendation; the probation officer supplied the following Judiciary Sentencing Information:

During the last five fiscal years (FY2021-2025), there were 181 defendants whose primary guideline was USSG §2D1.1 and Methamphetamine was the primary drug type, with a *Final Offense Level of 34* and a *Criminal History Category of VI*, after excluding defendants who received a USSG §5K1.1 substantial assistance departure. For the 181 defendants (100%) who received a sentence of imprisonment in whole or in part, *the average length of imprisonment imposed was 186 month(s)* and the median length of imprisonment imposed was 180 month(s). (PSR Recommendation Pg. 1).

The Defendant is a career offender within USSG § 4B1.1(a), with a 22 year long criminal history of drug trafficking, who was sent to prison on seven occasions for drug trafficking, and the Defendant continues to traffic in significant quantities of narcotics. Importantly, the Sentencing Commission shows the average sentence for a defendant with this Defendant's offense level and criminal history category is 186 months. Given the Defendant's unwillingness to deter his criminal conduct despite his numerous prior prison sentences, his disrespect for the law, as well as the need to protect the public, a guideline sentence is necessary to keep the public safe from the Defendant's criminal conduct and ensure he does not receive a disparate sentence to those similarly situated. If the Court takes into consideration the agreement between the which sets the guideline range of 168 to 210 months, thus, the Government respectfully requests the Court impose a sentence of 168 months in the Bureau of Prisons.

///

///

///

**CONCLUSION**

To deter the defendant from engaging in future crime, and to protect the community from defendant's illegal activity, the government recommends a sentence of 168 months' imprisonment and a $100 fee assessment. Such a sentence, followed by a minimum of 5 years of federal supervised release, will provide punishment for the defendant and protect the community, while also satisfying the requirement of 18 U.S.C. § 3553(a), as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated: August 4, 2026.

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Steven S. Chamberlin*
STEVEN S. CHAMBERLIN TXSB #24095296
Assistant United States Attorney